**Alou TRAORE, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

**No. 02–4164.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 15, 2003.

Decided Sept. 19, 2003.

Before McKEE and SMITH, Circuit Judges, and COWEN, Senior Circuit Judge.

## OPINION

McKEE, Circuit Judge.

In this immigration case, Alou Traore has filed a petition for review of a final order of removal issued by the Board of Immigration of Appeals ("BIA") on October 15, 2002. The BIA affirmed without opinion the decision of the Immigration Judge ("IJ") finding that Mr. Traore was removable under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(i)(I), as an immigrant who at the time of application for admission was not in possession of a valid entry document. The BIA also affirmed the IJ's denial of Mr. Traore's applications for asylum, withholding of removal, and voluntary departure. For the reasons that follow, we will dismiss the petition for review.[1]

### I.

Because we write only for the parties, it is not necessary to recite the facts of this case in detail. It is sufficient to note that Alou Traore, a native and citizen of Mali, first entered the United States on October 11, 1989, as a non-immigrant visitor. In an attempt to obtain a work permit from the Immigration and Nationalization Service ("INS"),[2] Mr. Traore filed an administrative asylum application on May 24, 1993.

---

1. This Court's jurisdiction arises under INA § 242(a), 8 U.S.C. 1252(a), which provides the exclusive procedure for judicial review of all final removal orders.

2. At the time of the events covered by this petition for review, the agency in charge of immigration matters was the INS. On March 1, 2003, the INS ceased to exist as an agency and its functions were transferred to the Department of Homeland Security ("DHS"). *See* Homeland Security Act of 2002, Pub. L. No. 107–296, 110 Stat. 2135 (Nov. 25, 2002). Nonetheless, for the sake of logical and narrative consistency, this opinion will continue to refer to the "INS" as the central immigration agency.

Mr. Traore sought asylum on the basis of his participation in the political party of former president of Mali, Moussa Traore, and because of his father's relationship to President Traore. Specifically, Mr. Traore stated that he has suffered past persecution, and he fears future persecution by the new government of Mali, which took power in a 1991 coup, because the new government would perceive him as a sympathizer of the old regime.

In 1994 Mr. Traore obtained advance parole from the INS, left the United States to visit Senegal, and returned to the United States on or about April 6 of the same year. On October 21, 1998, the INS denied Mr. Traore's asylum application and referred his case to an IJ for a removal hearing. At this point, Mr. Traore's parole was terminated.

On March 17, 1999, Mr. Traore appeared before the IJ and conceded the charge of removability. As relief from removal, Mr. Traore requested asylum and withholding of removal, or in the alternative, voluntary departure from the United States. The IJ denied Mr. Traore's requests and issued an order of removal, and the BIA affirmed without an opinion. This petition for review followed.

## II.

Mr. Traore claims the BIA erred by issuing a final order of removal, and each claimed error will be addressed separately.[3]

### A. Asylum and Withholding of Removal

INA § 208 gives the Attorney General discretion to grant asylum to a deportable alien. 8 U.S.C. § 1158(a). But, that discretion can only be exercised if the applicant qualifies as a "refugee." *Id.* The term "refugee" is defined by statute as:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside of any country in which such person last habitually resided, and who is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). The asylum applicant must present some evidence that the alleged persecutors want to punish him "on account of" one of the five statutory grounds in order to establish eligibility for asylum. *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The "well-founded fear of persecution" standard involves both a subjectively genuine fear of persecution and an objectively reasonable possibility of persecution. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 430–31, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

Withholding of deportation is closely related to asylum. However, unlike the asylum provision, the withholding provision states that the "Attorney General *shall not* deport or return an alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 243(h); 8 U.S.C. § 1253(h) (emphasis added). To succeed on an appli-

---

**3.** We must sustain the BIA's determination if there is substantial evidence in the record to support it. *Abdille v. Ashcroft,* 242 F.3d 477, 483 (3d Cir.2001). Under this deferential standard, the BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it. *Id.* Because the BIA affirmed the IJ's ruling without an opinion, we review the decision of the IJ as if it were the decision of the BIA. *Abdulai v. Ashcroft,* 239 F.3d 542, 549 n. 2 (3d Cir. 2001).

cation for withholding of deportation, the alien must establish by a "clear probability" that his life or freedom would be threatened in the proposed country of deportation. *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir.1991). "Clear probability" means that it is "more likely than not" that an alien would be subject to persecution. *INS v. Stevic*, 467 U.S. 407, 429–30, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). The "clear probability" standard is a more rigorous standard than the "well-founded fear" standard for asylum. *Janusiak*, 947 F.2d at 47. Thus, if an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation. *Id.*

In this case, as evidence of past persecution, Mr. Traore testified as to three separate incidents: one being that his house was vandalized; another where he was the victim of an assault; and another incident of bottle-throwing. Each was committed by unknown assailants, and none of the incidents were reported to the police. Mr. Traore also testified that his uncle was the Minister of Education and was killed by the mob in 1991. The IJ found that although Mr. Traore was credible and the incidents took place during a time of social unrest in Mali, he was not entirely convinced the incidents were politically motivated. The IJ further found that by the time of the asylum hearing in 2000, the 1991 coup d'etat was "fairly remote in time" and that Mali had undergone pivotal changes such that Mr. Traore was unable to establish a well-founded fear of future persecution on account of his political opinion. In support of his decision, the IJ quoted extensively from the State Department reports showing only that high-ranking former officials had been arrested, and that mere support of the former regime would not cause anyone to be in danger

today. Lastly, the IJ determined that any relationship between Mr. Traore and the former Minister of Education was unproven.

 There is substantial evidence in the record to support the findings of the IJ. Mr. Traore did not know his attackers and no politically-charged threats were made during the attacks, and thus there is not sufficient evidence showing these incidents were on account of Mr. Traore's political opinion. With respect to fear or future persecution, State Department reports do not indicate that Mali is in the state of political and social turmoil that it suffered in 1991. Further, Mr. Traore's fear is belied by the fact that his parents remain in Mali without encountering any problems, even though his father was the one with the direct connection to the former president of Mali. Thus, the record supports the IJ's finding that Mr. Traore failed to show he suffered past persecution on account of his political opinion or that he had a well-founded fear of future persecution.

## B. Voluntary Departure

The Attorney General has discretion to grant an alien "voluntary departure" at his own expense. 8 U.S.C. § 1229c. The INA statutorily bars voluntary departure for "an alien who is arriving in the United States." 8 U.S.C. § 1229c(a)(4). Instead, an arriving alien may avoid the stigma of a forced removal, and obtain *de facto* voluntary departure, by simply withdrawing his application for admission. *Id.*

An "arriving alien" is defined as any "applicant for admission ... coming into the United States at a port-of-entry" except "an alien who was granted advance parole which the alien obtained in the United States prior to the alien's departure from and return to the United States." 8 C.F.R. § 1.1(q). "Advance pa-

584

role" is an administrative device that allows an alien present within the United States, who has a pending asylum application and wishes to leave the country temporarily, to obtain permission from the INS to be paroled into the country upon return, provided the other conditions for admissibility are met. 8 C.F.R. §§ 208.8, 212.5(f). Parole is not indefinite, and when parole terminates, the alien "shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i).

■ As was already stated above, Mr. Traore did obtain advance parole in 1994. However, once the INS denied his asylum application in late 1998 and commenced removal proceedings against him in 1999, Mr. Traore's parole was terminated, and he reverted back to the status he had at the time he was paroled into the country in 1994. That is, he has the status of an arriving alien, and is removable for lack of valid entry documents. Thus, the statutory bar against voluntary departure for arriving aliens applies to Mr. Traore, and the IJ properly found him ineligible for this relief.

### III.

For all of the above reasons, the petition for review is denied.